[Cite as *Camera v. Lorain Civ. Serv. Comm.*, 2013-Ohio-5644.]

| | | |
|---|---|---|
| STATE OF OHIO | )<br>)ss: | IN THE COURT OF APPEALS<br>NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | |
|---|---|
| CHARLES CAMERA<br><br>    Appellant<br><br>    v.<br><br>CITY OF LORAIN CIVIL SERVICE<br>COMMISSION<br><br>    Appellee | C.A. No.    13CA010382<br><br><br>APPEAL FROM JUDGMENT<br>ENTERED IN THE<br>COURT OF COMMON PLEAS<br>COUNTY OF LORAIN, OHIO<br>CASE No.    12CV176624 |

DECISION AND JOURNAL ENTRY

Dated: December 23, 2013

---

BELFANCE, Presiding Judge.

{¶1}    Appellant, Charles Camera, appeals the order of the Lorain County Court of Common Pleas that affirmed a decision of the Lorain Civil Service Commission. This Court affirms.

I.

{¶2}    The City of Lorain employed Mr. Camera for almost thirty-six years, most recently in the position Street Commissioner. In that capacity, Mr. Camera was responsible for directing all activities of his department, overseeing employees, establishing a departmental budget of $5.3 million, and maintaining accurate records. During his employment, Mr. Camera also volunteered as president of the Lorain Youth Baseball Association and, in that position, assumed significant fundraising and management responsibilities. In 2008, concerns about the operation of instant bingo machines for the benefit of the Lorain Youth Baseball Association came to the attention of the Lorain County Sheriff's Office, which collaborated with the Ohio

Attorney General in an investigation that followed. The Attorney General discovered numerous apparent discrepancies in the financial records submitted to the State of Ohio by Mr. Camera and determined that it could not account for approximately $230,000 in bingo proceeds.

{¶3} After being charged with several felonies, Mr. Camera pleaded guilty to four counts of tampering with records in violation of R.C. 2913.42(A)(2), a first degree misdemeanor, and one count of theft in violation of R.C. 2913.02(A)(2), also a first degree misdemeanor. He received a four-month jail sentence, which was suspended on the condition of good behavior for two years. The City learned of his guilty plea and terminated his employment on the basis of "immoral conduct, dishonesty, discourteous treatment of the public, and pleading guilty to a theft offense while serving as a public employee." Mr. Camera appealed his termination to the Lorain Civil Service Commission, which affirmed his discharge. He then appealed to the Lorain County Court of Common Pleas in accordance with R.C. 119.12. The Court of Common Pleas affirmed the decision of the Civil Service Commission, and Mr. Camera appealed.

II.

ASSIGNMENT OF ERROR

> THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT AFFIRMED THE CIVIL SERVICE COMMISSION'S TERMINATION OF [MR. CAMERA] WHERE ITS DECISION WAS NOT SUPPORTED BY RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE[.]

{¶4} In his assignment of error, Mr. Camera argues that the trial court abused its discretion in affirming the decision of the Civil Service Commission because, in his view, the fact that he pleaded guilty to misdemeanor theft and tampering with records did not justify termination of his employment. We do not agree.

{¶5} An employee who is terminated by a civil service municipality may appeal the termination to the civil service commission and, in turn, may appeal an order of the civil service

commission to the Court of Common Pleas under R.C. 119.12. R.C. 124.34(B). *See also* R.C. 124.01(E). The Court of Common Pleas "may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and any additional evidence the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law." R.C. 119.12. *See generally Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110-112 (1980). This Court reviews the decision of the court of common pleas for an abuse of discretion. *Brooke v. Ohio State Dental Bd.*, 9th Dist. Lorain No. 08CA009325, 2008-Ohio-4949, ¶ 6. In doing so, we consider whether the trial court's decision is unreasonable, arbitrary, or unconscionable. *Grill v. Ohio Dept. of Job and Family Servs.*, 9th Dist. Medina No. 03CA0029-M, 2003-Ohio-5780, ¶ 16.

{¶6} Under R.C. 124.34(A), employees in the civil service of cities serve "during good behavior[,]" and their employment may be terminated

> for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, violation of any policy or work rule of the officer's or employee's appointing authority, violation of this chapter or the rules of the director of administrative services or the commission, any other failure of good behavior, any other acts of misfeasance, malfeasance, or nonfeasance in office, or conviction of a felony.

The statute does not require termination in the event any of the circumstances listed exist as to an employee but, instead, permits the appointing authority to exercise its discretion to terminate a classified employee for those reasons. *Craddolph v. Ackerman*, 57 Ohio App.2d 150, 152 (10th Dist.1978).

{¶7} The City's decision to terminate Mr. Camera's employment focused on two issues: the fact that he pleaded guilty to misdemeanor offenses and the dishonesty represented by the conduct underlying the criminal offenses and Mr. Camera's response when questioned about his guilty plea. The trial court concluded that in light of Mr. Camera's job responsibilities and

the "offenses of 'dishonesty'" to which he pleaded guilty, the Civil Service Commission's decision to affirm Mr. Camera's termination was supported by reliable, probative, and substantial evidence and consistent with the law. This determination does not reflect an abuse of the trial court's discretion.

{¶8} The evidence provided at the Civil Service Commission's hearing established that in the course of Mr. Camera's responsibilities as president of the Lorain Youth Baseball Association, he assumed responsibility for several instant bingo ticket machines that had been placed in local bars for the benefit of the organization. That responsibility included collecting funds and unused tickets from the bars and filing regular reports with the State of Ohio. The basis of the criminal charges against Mr. Camera was twofold, and his own testimony established the truth of the charges in these respects. First, he failed to keep an accurate accounting of unsold tickets with reference to total proceeds from the sales, resulting in an estimated $230,000 that could not be accounted for over the course of several years. Second, Mr. Camera intentionally misreported the income generated by the tickets on reports that he submitted to the State of Ohio.

{¶9} With respect to the latter, Mr. Camera explained that instant bingo receipts must be less than fifty percent of an establishment's revenue or the bar would lose its permit to sell the instant bingo tickets. Mr. Camera admitted that when he discovered how profitable the moneymaker would be for the Lorain Youth Baseball Association, he underreported the income from each machine so that it would never exceed the fifty percent revenue threshold. The record from the Civil Service Commission is clear that Mr. Camera admitted this action. It is equally clear – and at least as significant – that he displayed few qualms about having done so. In his own words:

> What I think, had I followed the law, we wouldn't have put in two Class F fields, we wouldn't have built a concession stand, we wouldn't have put those pavilions up, we wouldn't have put [in] a $15,000 sewer line * * * if we would [have] follow[ed] the law.

He went on to explain, "What I did as a volunteer, I'm not happy about. I'm not sure if the means justify the end. I'm still not quite sure with that yet." In yet another exchange, Mr. Camera agreed that his actions reflected on his character, but still maintained confidence in the outcome of his actions:

> Q: You don't think tampering with records, failing to file records and stealing affects your ability to be honest?
>
> * * *
>
> It's a character trait, Mr. Camera, don't you agree?
>
> A: *** [Y]es, it would go towards my character. Yes, it most[] certainly would go towards my character.
>
> * * *
>
> [I'm] [n]ot proud of how we got there, but we got there.

Mr. Camera's owns statements in this regard lend credence to his appointing authority's concern that, even after pleading guilty, Mr. Camera denied wrongdoing. The conduct underlying his criminal convictions and his attitude with respect to the conduct serve to emphasize the inseparability between his dishonesty outside of work and the City's concern regarding his continued employment. The trial court did not abuse its discretion to the extent it affirmed Mr. Camera's termination on the grounds of dishonesty.

{¶10} The City also based Mr. Camera's termination on Section 3.16 of the City's personnel policies, which provides:

> The conviction of any employee for a misdemeanor by a federal, state or local court may be grounds for disciplinary action. If the conviction is relative to the individual's employment with the City of Lorain, the discipline may result in the

employee's dismissal per applicable Collective Bargaining Agreement and city ordinance.

Although dismissal is not mandatory, the policy permits the City to exercise its discretion as to whether to dismiss an employee following a misdemeanor conviction if the conviction is "relative" to the employee's employment. Although Mr. Camera's convictions for tampering with records and theft did not arise in the course of his employment, his appointing authority maintained that they were "relative to" his employment in the sense that his duties and responsibilities as President of the Lorain Youth Baseball Association were similar to his job responsibilities and that in both capacities, Mr. Camera functioned within minimal oversight. The record confirms that in both positions, Mr. Camera was tasked with maintaining accurate records regarding significant amounts of money and with diligently managing the resources entrusted to his care. In addition, Mr. Camera's employment required him to function as a manager acting on behalf of the City and to determine policy with respect to his department. The City's position that there is a correlation between the loss of public trust that Mr. Camera suffered as a result of his misdemeanor conviction and the loss of public trust that would inure to the City as a result of his continued employment is, therefore, supported by the record. The trial court did not abuse its discretion by affirming the Civil Service Commission in this regard.

{¶11} Mr. Camera's assignment of error is overruled.

III.

{¶12} Mr. Camera's assignment of error is overruled, and the judgment of the Lorain County Court of Common Pleas is affirmed

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 

EVE V. BELFANCE
FOR THE COURT

WHITMORE, J.
CARR, J.
CONCUR.

APPEARANCES:

WAYNE R. NICOL, Attorney at Law, for Appellant.

DONALD ZALESKI, Attorney at Law, for Appellee.